CRAIN, Judge.
Defendant, Alexander Matthews, appeals a judgment of the district court which found him to be the father of the minor child Terrance Landrum and hence, responsible for the child’s maintenance and support. We affirm the district court judgment.
On July 19, 1984, a petition to establish paternity of Terrance Landrum was filed against Alexander Matthews by the minor’s mother, Geneva Landrum.[1]
Defendant answered the suit on August 17, 1984, wherein he denied the allegations against him.
Following discovery and a pre-trial order the matter was tried on October 20-21, 1986 and March 2, 1987. The case was taken under advisement and judgment was rendered on January 4, 1988 in favor of defendant dismissing plaintiff’s suit with prejudice. The court found that the corroborating evidence was unreliable and the testimony of the mother and blood tests results were, alone, insufficient to satisfy plaintiff’s burden of proof.
Plaintiff’s motion for a new trial was dismissed June 21,1989. On June 29, 1989, she perfected a devolutive appeal to this Court. In an unpublished opinion, a five judge panel of this Court reversed the trial court judgment and remanded the matter to the district court for further proceedings in accord with the opinion. State v. Louisiana in The Interest of Terrance David Ryan Landrum v. Matthews, 581 So.2d 771 (1991). In its decision, this Court found that a 1988 amendment to Louisiana Revised Statute Title 9 Section 397.3(D)[2] was to be applied retroactively.
On June 3, 1991, the Louisiana Supreme Court granted in part and denied in part the defendant’s application for supervisory writs. State of Louisiana In The Interest of Terrance David Ryan Landrum v. Matthews, 583 So.2d 483 (1991). In its order, the Supreme Court stated the following:
Granted. The court of appeal judgment is amended to provide that upon remand the parties may offer additional evidence. Otherwise, denied.
Following the remand of this matter to the district court, the trial judge, on February 7, 1992, issued a judgment in favor of the plaintiff and against the defendant finding him to be the father of the minor child, Terrance Landrum, and ordering him to render maintenance and support.
This timely appeal, by the defendant, followed.
The issues presented on appeal are as follows: (1) Did the trial court commit manifest error in concluding that Geneva Land-rum proved, by a preponderance of the evidence, that Alexander Matthews was the father of her minor child? and (2) Did this court previously err in determining that the amendment to Louisiana Revised Statute 9 Section 397.3(D) was to be applied retroactively. Although the plaintiff raises a third issue for our consideration, where she has neither filed an appeal, nor answered defendant’s appeal, we decline to address this matter as it is not properly before the Court. La.C.C.P. Arts. 2121; 2133.
We consider the issues raised by the defendant in the inverse order of their presentation.

Retroactively of The Paternity Statute

The defendant urges this Court to find that its prior determination, to apply the 1988 amendment to Louisiana Revised Statute, Title 9:397.3(D), retroactively, was error.
*856 This precise issue was the subject of the prior appeal of this case before this Court. Thus, the decision by this Court on that subject is the "law of the case”. See: Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La., 1984); Petition of Sewerage and Water Board of New Orleans, 278 So.2d 81 (La., 1973). As such, the judgment of this Court on a prior appeal is not reviewable on a subsequent appeal. Alba v. Holstead, 210 La. 357, 27 So.2d 130 (1946).
Since the issue of retroactivity of Louisiana Revised Statute, Title 9:397.3(D) was decided by a five judge panel of this Court and writs were denied on this issue by the Louisiana Supreme Court, we decline to again review this matter on this subsequent appeal.
BURDEN OF PROOF
The sole remaining issue for our consideration is whether the trial court erred in concluding that the plaintiff proved the paternity of Alexander Matthews by a preponderance of the evidence.
The determination whether there has been sufficient proof of descent from an alleged parent is a question of fact. State in Interest of Braden v. Nash, 550 So.2d 866 (La.App., 2d Cir., 1989). Plaintiff bears the burden of proving paternity by a preponderance of the evidence. Guillory v. Fuselier, 549 So.2d 920 (La.App., 3rd Cir., 1989).
Following the trial of this matter, the court, in its reasons for judgment, found that the test results did not exclude paternity. The court apparently felt that although the test results and testimony of the plaintiff were probative of paternity, that this evidence alone was insufficient under the statute to prove paternity.[3] Thereafter, upon remand, applying the subject statute, as amended, the trial court found that plaintiff had proven Alexander Matthews' paternity of the minor child, Terrance Landrum.
The statute controlling the admissibility and effect of the blood test results reads as follows:
Sec. 397.3. Admissibility and effect of test results
A. A written report of the results of the initial testing, certified by a sworn affidavit by the expert who supervised the tests, shall be filed in the suit record. A notice that the report has been filed shall be mailed by certified mail to all parties by the clerk of court or shall be served in .accordance with Code of Civil Procedure Article 1314. A party may challenge the testing procedure within thirty days of the date of receipt or service of the notice.
B. If the court finds there has been a procedural error in the administration of the tests, the court shall order an additional test made by the same laboratory or expert. If there is no timely challenge to the testing procedure or if the court finds there has been no procedural error in the testing procedure, the certified report shall be admitted in evidence at trial as prima facie proof of its contents, provided that the party against whom the report is sought to be used may summon and examine those making the original of the report as witnesses under cross-examination.
C. Any additional testing ordered by the court pursuant to this Part shall be proved by the testimony of the expert.
D. If the court finds that the conclusions of all the experts as disclosed by the reports, based upon the tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence.
Added by Acts 1972, No. 521, Sec. 5. Amended by Acts 1985, No. 38, Sec. 1; Acts 1988, No. 298, Sec. 1.
*857 In this case the written blood test results were filed of record in this lawsuit. They were accompanied by the affidavit of Dr. Leslie Bryant, Jr. an expert specializing in pathology with a sub-specialty in blood banking. He supervised the testing. Dr. Bryant concluded from the raw data presented to him, concerning the red blood cell and HLA (i.e., white blood cell) testing, that “the probability of paternity is 98.20%” and the “probability of non-paternity is 1.80%”.
The test results were challenged by the defendant. A hearing was conducted concerning the blood testing and results.
Over the objections of defense counsel, concerning the issue of the chain of custody, the trial court concluded that the blood tests and results were admissible.
At the hearing concerning the issue of the admissibility of the blood tests and their results, several witnesses were presented to testify.
Debbie Schroeder, an employee of Southern Baptist Hospital, and the secretary to Director Bryant, testified she was in charge of scheduling the appointments of persons who are involved in being tested for paternity. She also secures identification, photographs, and the thumb prints of these persons. As part of her official duties, Ms. Schroeder was responsible for labeling the test tubes and taking them, with the respective parties, to the nurse. Ms. Schroeder testified that the blood samples, once secured, would be locked in a file and given to the proper lab. Samples were taken each to the White Cell Unit and the Red Cell Unit of the hospital. They were then tested and the results were forwarded to the Director. With regard to this particular case Ms. Schroeder stated that she followed standard operating procedure.
Betty Hever was the nurse at Southern Baptist Hospital who drew the blood samples of the plaintiff and defendant for purposes of blood testing. She testified that she drew two tubes of blood from each party and gave these to Ms. Schroeder. She had first compared the photographs presented to her with the persons present for the testing and she also asked these persons their names. Ms. Hever signed the documents which accompanied these samples. She stated that she followed standard operating procedures in this case.
In this paternity case, Juliette Pansano was the person responsible for drawing the blood of the minor child Terrance Landrum. She secured two samples, signed the identification cards and presented the blood samples to Dr. Bryant’s secretary.
Doris Ratcliff is the supervisor of the Red Blood Cell Unit at Southern Baptist Hospital. She testified that two samples for each of the parents and child were delivered to her laboratory. The samples were tested, in duplicate, by two different technicians. The samples were locked in a file cabinet before the test and in a refrigerator during the test. The blood reports were also kept under lock after the tests. Thereafter she reviewed the reports, assigned obligatory genes and forwarded these reports to Dr. Bryant through his secretary. Ms. Ratcliff also stated that she signed the flow chart. In her handling of this case, Ms. Ratcliff followed standard operating procedure.
Kathleen Maddicks testified that she was the supervisor of the HLA (i.e., white blood cell) Unit. She is responsible for testing of white cell antigens. Ms. Maddicks testified that her unit receives samples which are delivered to them and which are properly labeled before receipt. When not being tested, these samples and their accompanied documents are locked in a file. This witness and her assistant Andrea Woodruff have access to the file. In this case Ms. Woodruff tested the sample. According to Ms. Maddick, standard operating procedures were followed during this time. The results were obtained and forwarded to Dr. Bryant through his secretary.
Andrea Woodruff is a medical technician in the HLA Laboratory at Southern Baptist Hospital. She performed the white cell blood type in this case. The samples were received on the 30th of July, 1985 and tested the next day. They were secured in a locked file over night. Although she received no assistance in testing these samples, Ms. Woodruff testified that she did receive assistance from Kay Maddicks in *858 calculating the results. Ms. Woodruff charted these samples in and out of her department. She followed standard operating procedures in handling the samples.
Dr. Leslie Bryant, the Medical Director of the Southern Baptist Hospital Blood Bank answered a return on the subpoena duces tecum by delivering and identifying the reports regarding paternity, and the red blood cell testing and white blood cell testing. He stated that these latter documents were made at the time of testing and in the normal course of business. He also testified that a chain of custody exists, as evidenced by the document that is signed by the persons handling the samples as they are drawn and channeled through the testing units systems.
He testified that in this case there had been, to his knowledge, no deviation in the standard operating procedure for the preparation of documents, drawing of blood and submission of written reports. The operations of this Blood Bank are conducted according to the procedural manual for. the department and they are quality controlled.
According to Dr. Bryant, he utilized the guidelines of the American Medical Association for Blood Banks in reaching his results. He also utilized his knowledge of blood banking, statistics, mathematics and genetics. He testified that he took into account the results of the red cell test for antigens and the white cell tests for lymphocyte antigens in reaching his conclusion. He stated that the same testing was conducted for the red cell sample and the white cell sample but that the typing was different. As a result of the testing there were no exclusions in the red cell system and no exclusions in the white cell system. Dr. Bryant testified that where there are no exclusions, one must formulate the probability of paternity. This is done by comparing the alleged father with a random man. In this analysis, Dr. Bryant concluded that the defendant is 54.67% more likely to be the father of this child, than a random man. He also concluded that there was a 1.80% chance the defendant is not the father of this child. He found that there is 98.20% probability of paternity, based on a probability of 50%. Dr. Bryant characterized this as a “high probability” of paternity. Dr. Bryant did preface his remarks by stating that although blood tests cannot prove paternity, they can exclude paternity by ten to the seventh, which is almost absolute.
Based upon the evidence presented we find no error in the trial judge's admission of the paternity test results and his reliance upon them in reaching his conclusion on the issue of paternity,
Scientific testing alone is insufficient to prove paternity. See: Guillory v. Fuselier, supra. However, where there is other corroborating evidence of paternity, in addition to a high paternity index, paternity has been found. See: State in the Interest of Braden v. Nash, supra.
In this case the testimony of the parties was in conflict.
The plaintiff, Geneva Landrum testified that her son, Terrance, was born on June 5, 1983. She stated that she began dating the defendant, a married laborer and hospital employee, in April, 1980. She stopped dating him somewhere between March and June of 1984. During this time the couple had sexual intercourse on a weekly to biweekly basis. These incidents occurred primarily at two motels in Baton Rouge and the former home of the defendant’s deceased mother. The child was conceived in August or September, 1982. During the three months before and after the child's conception, plaintiff testified she dated no one else. The plaintiff stated that she spoke to the defendant about being pregnant. The first conversation occurred following the diagnosis of her pregnancy by her physician. She stated that the defendant appeared “shocked”. According to the plaintiff, the couple discussed names for the baby and the defendant expressed an interest in having a boy.
Ms. Landrum testified that Mr. Matthews visited her every 2 or 3 weeks after her son’s birth, until they dissolved their relationship. During that time there were two occasions when she received financial assistance from the defendant for Terrance. Once she received $100 for medical *859 care and on another occasion she was given $40. She also stated that, prior to the birth, the defendant gave her $100 to buy a baby bed.
On one visit the defendant held the child. Ms. Landrum testified that the defendant admitted his paternity before her mother and a friend of the couple, Pete Perry.
Additionally Ms. Landrum testified that two of the defendant’s nieces visited the baby. She also stated that, at the request of the defendant, his sister took plaintiff to the doctor. According to Ms. Landrum she had no doubt that Matthews was the father of her son Terrance.
Alexander Matthews testified that he was called by the plaintiff to perform brick repairs on her house. The couple met in the late 1970’s. He stated that he last saw her in early 1981. According to Matthews, he did not court nor date the plaintiff. He first met her son Terrance at the Blood Bank in Baton Rouge. Matthews testified that he engaged in one incomplete act of sexual intercourse with Ms. Landrum. This was in early 1981 at the former home of his deceased mother. No contraceptives were used. The defendant denied Ms. Landrum’s allegations that the couple participated in social outings, such as attendance at football games.
According to Mr. Matthews he has been married to the same person for 14 years and has two children.
Defendant stated that the plaintiff called him in 1983 and told him she was pregnant with his child. He denied seeing her after this time. According to Mr. Matthews he did not know the child’s sex, nor the age of the child. He testified that he never admitted his paternity. Likewise, according to the defendant he never rendered any financial assistance regarding this child.
In this case where there is a high paternity index, an admission of sexual relations by the defendant with the plaintiff and the testimony of the plaintiff to the effect that she had sexual intercourse with the defendant, and no one else, during the period surrounding that of conception, we find no error in the conclusion of the trial court judge that the plaintiff satisfied her burden of proof in this case.
For the reasons assigned, the judgment of the trial court is affirmed at defendant’s costs.
AFFIRMED.

. In subsequent proceedings, the State of Louisiana, D.S.S., Support Enforcement Services was substituted as party plaintiff.

. The effect of the amendment was to delete the language of the statute which read: "The tests and the testimony of the mother alone shall not be sufficient grounds for determining that the man is the father of the child.”

. At that time the subject statute read, in pertinent part:
La.R.S. 9 Sec. 397.3 Admissibility and effect of test results D. ...
The tests and the testimony of the mother alone shall not be sufficient grounds for determining that the man is the father of the child. (Emphasis added)